UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MICHAEL EYRAUD, | No. 2:17-cv-00791-JAM-DB |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| SWIFT TRANSPORTATION CORPORATION d/b/a ST SWIFT TRANSPORTATION CORPORATION; SWIFT TRANSPORTATION CO., INC.; SWIFT TRANSPORTATION COMPANY; and DOES 1-100 INCLUSIVE, | |
| Defendants. | |

Michael Eyraud ("Plaintiff" or "Eyraud") sued Swift Transportation Co. of Arizona, LLC ("Defendant" or "Swift") for violations of California's Fair Employment and Housing Act (FEHA). Compl., ECF No. 1-1. Swift now moves for summary judgment. Mot., ECF No. 14. Eyraud opposes Defendants' motion. Opp'n, ECF No. 15. For the reasons set forth below, the Court GRANTS Defendants' motion.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

Swift is a trucking company that holds safety as a priority in its operations, and expects its drivers to be able to back up

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for April 24, 2018.

1

their trucks safely. Undisputed Material Fact ("UMF") 2-3, ECF No. 15-1, pp. 2-3. Swift hired Plaintiff as a truck driver in February 2015. UMF 1. At the time of hiring, Eyraud was 66 years old. Id. After several months of driving, Eyraud began driving solely for Swift's account with Amazon. Eyraud Dep., ECF No. 14-2, p. 42.

In January 2016, Amazon reported to Swift that Eyraud had backed his truck into a set of rollers on Amazon's property. Schrock Decl., ECF No. 14-3, p. 2. Eyraud disputes that this was an accident. Eyraud Dep., ECF No. 14-2, p. 77. Eyraud later wrote Swift that Amazon "put these flats of rollers right next to where we're supposed to back up our trucks to floating metal ramps and I touched this thing, but there were no damage and no report because no damage." Eyraud Dep., Ex. 15, ECF No. 14-2, p. 138. In his deposition, Eyraud testified that the "thing" he "touched" while backing up was "possibly" the rollers Amazon reported he hit. Eyraud Dep. at 164.

Following the Amazon complaint, another Swift driver, Tamara Evans, submitted a written complaint to Swift that Eyraud had hit her truck while backing up. Schrock Dep., Ex. 1, ECF No. 14-3, pp. 6-7. Evans details that after Eyraud hit her trailer, she confronted him and he claimed "he just scratched it . . . no big deal." Id. Evans further detailed that Eyraud "had no clue how to do basic backing" and she had to back up his truck for him. Id. Eyraud does not recall the events in Evans's letter. Eyraud Dep. at 78.

In February 2016, Swift sent Eyraud to Lathrop, California to work with a trainer, Dennis Rogers, on his backing skills.

2

Eyraud Dep. at 78-80. Eyraud believes that Rogers verbally told him that he passed the one-day training. Id. Swift's records indicate that Rogers reported Eyraud had failed the training. Schrock Decl. at 3.

Swift sent Eyraud down to its Phoenix terminal in March 2016 to trade in his truck and receive additional back-up training from John Kramer. Eyraud Dep. at 82-83. For three days, Eyraud worked with Kramer on how to back-up his truck safely. Id. at 83-84. Eyraud recalls Kramer telling him once, "You're old and brittle, and you have to turn around to look to see where the trailer is going" when backing up. Id. at 23. Eyraud never complained about or reported this comment to Swift during his employment. See id.

Kramer reported to Swift that Eyraud was not able to safely back-up a truck. Schrock Decl., Ex. 3, pp. 2-9. Kramer stated that Eyraud struggled to understand the concept of backing and rated him a 2 out of 10 on his backing skills after two days of class. Id. at 4. After the third day of class, Kramer determined that Eyraud had failed and there was nothing else he could do with him. Id. at 2. During this training, Kramer reported that Eyraud jackknifed the truck twice, Eyraud Dep., Ex. 13, ECF No. 14-2, p. 135; however, Eyraud does not believe jackknifing is problematic. Eyraud Dep. at 119.

After those three days of training, Swift did not replace Eyraud's truck. Id. at 82-83. Instead, Swift had Eyraud take a bus back from Phoenix. Id. at 101.

Supervisors at Swift determined, based on the information provided by Rogers and Kramer, that Eyraud was not a safe driver

in a close quarters backing situation. Lauletta Decl., Ex. 1, pp. 2-4. On April 1, 2016, Eyraud's supervisor, Trevor Schrock, called Eyraud to terminate him. Eyraud Dep. at 102. Following his termination, Eyraud submitted a feedback report to Swift regarding his termination. Eyraud Dep., Ex. 15, ECF No. 14-2, p. 138. In that report, Eyraud voiced disapproval for the reasons he was terminated. Id. He also admitted that he had a hard time with backing up a full-sized truck after driving a smaller truck for five to six months. Id. Swift reiterated that Eyraud's termination was final after he failed backing trainings in both Lathrop and Phoenix. Id. at 137.

Other than Kramer's remark that Eyraud was "old and brittle," Eyraud recalls one other age-related remark made during his employment at Swift. Id. at 30-31. An intake coordinator, Ben Brown, asked Eyraud, "Exactly how old are you?" Eyraud Dep. at 27-31. Eyraud found the question inappropriate and did not respond. Id. He never complained about or reported the question during his employment. Id. at 100-01.

Eyraud claims that Swift's termination of him constituted age discrimination because he had driven for another trucking company for over a year without being fired and received a safety award from that company while home with a broken hand. Id. at 171-72.

Eyraud brought suit in San Joaquin County Superior Court on March 14, 2017, alleging: (1) harassment based on age in violation of FEHA, California Government Code §§ 12940 and 12941; (2) discrimination based on age in violation of FEHA, California Government Code §§ 2940 and 12941; (3) retaliation based on age

in violation of FEHA, California Government Code §§ 12940 and 12941; and (4) retaliation and wrongful termination in violation of public policy. Compl. at 2-20. Swift removed this action to federal court on diversity grounds. Notice of Removal, ECF No. 1. Swift seeks summary judgment on all of Eyraud's claims, as well as on Eyraud's request for punitive damages. Mot. at 23-24.

## II. OPINION

### A. Claim I: Age Harassment

Eyraud's first cause of action alleges that Swift harassed him based on age in violation of FEHA §§ 12940 and 12941.[2] Compl. at 2-8. Swift argues this claim fails as a matter of law. Mot. at 17.

FEHA prohibits age-based harassment of employees. Cal. Gov't Code § 12940(j)(1). FEHA-qualifying harassment is "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives," rather than "performance of necessary personnel management duties." Reno v. Baird, 957 P.2d 1333, 1336 (Cal. 1998). "To establish a claim for harassment, a plaintiff must demonstrate that: (1) [he] is a member of a protected group; (2) [he] was subjected to harassment because [he] belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235,

---

[2] In ¶¶ 10-12, 26-28, and 42-44, the Complaint alleges that Plaintiff was harassed, discriminated against, and retaliated against "on the basis of sex." Compl., ECF No. 1-1, pp. 5-6, 10-11, 14-15. Since neither party addresses these allegations, the Court considers it to be a pleading error.

5

1244 (9th Cir. 2013).

There is no dispute that under FEHA Eyraud qualifies as a member of a protected group because he is over the age of 40. The Court also assumes without deciding that he was subject to inappropriate comments based on his age, rather than other characteristics. The primary dispute is whether the comments Eyraud alleges rise to the level of creating a hostile work environment.

"[O]nly behavior so objectively offensive as to alter the 'conditions' of the victim's employment" creates a hostile work environment. Lyle v. Warner Bros. Television Prods., 132 P.3d 211, 222 (Cal. 2006). A hostile work environment is one that "is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)) (internal citations omitted). Whether a work environment is hostile is determined by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "The working environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995), as amended (Apr. 24, 1995).

Annoying or merely offensive comments in the workplace are

not actionable.  Lyle, 132 P.3d at 223.  A plaintiff must show a "concerted pattern of harassment of a repeated, routine or a generalized nature."  Lawler, 704 F.3d at 1244 (quoting Aguilar v. Avis Rent A Car Sys., Inc., 980 P. 2d 846, 851 (Cal. 1999)).  "Isolated incidents that do not exist in a concerted pattern can also fulfill the 'severe or pervasive' prong, but only if such isolated incidents consist of 'a physical assault or the threat thereof.'"  Landucci v. State Farm Ins. Co., 65 F. Supp. 3d 694, 703-04 (N.D. Cal. 2014) (quoting Hughes v. Pair, 209 P.3d 963, 974-75 (Cal. 2009)).

Here, the two isolated instances of alleged misconduct by Swift employees do not rise to the level of creating a hostile work environment for Eyraud.  A reasonable jury could not find that the singular instance of Brown publicly asking Plaintiff, "Exactly how old are you?" was severe, threatening, or humiliating enough to unreasonably interfere with Eyraud's work performance or create a hostile work environment.  Similarly, Kramer telling Eyraud that he was "old and brittle, and [he had] to turn around to look to see where the trailer is going," may be offensive, but a reasonable jury could not find it created a hostile work environment.  The comment was not accompanied by physical threats or humiliation and was not part of a concerted or repeat pattern of discrimination.  See Allen v. Centillium Commc'ns, Inc., No. C-06-06153 (EDL), 2008 WL 916976, at *7 (N.D. Cal. Apr. 3, 2008) ("[E]vidence of, at most, isolated stray remarks is insufficient to give rise to a triable issue of fact regarding hostile work environment or harassment based on age.").

The evidence, viewed in the light most favorable to Eyraud,

does not meet the legal standard of harassment under FEHA. The Court grants summary judgment to Swift on Eyraud's first claim.

### B. Claim II: Age Discrimination

Eyraud's second cause of action alleges that Swift discriminated against him based on age in violation of FEHA §§ 12940 and 12941. Compl. at 8-13. Swift moves for judgment on Eyraud's discrimination claim, arguing that he cannot establish a prima facie case of discrimination under the McDonnell Douglas analysis, that Swift had a legitimate, nondiscriminatory reason for firing Eyraud, and that Eyraud has no evidence that Swift's reason was pretextual or had an improper motive. Mot. at 7-17. Eyraud responds that he has direct evidence of age discrimination and that Swift's explanation for his termination was mere pretext. Opp'n at 10-16.

#### 1. Eyraud Has Not Presented Any Evidence of Direct Discrimination

Eyraud's opposition asserts that the two comments made to him by Brown and Kramer constitute direct evidence of age discrimination. Yet none of the cases Eyraud relies upon support the argument that the two isolated statements here are direct evidence of discrimination. See Opp'n at 10-12; Reply at 4 n.2.

Eyraud then argues that "direct evidence of illegal motivation usually takes the form of derogatory statements concerning a plaintiff's protected status" and "[s]uch derogatory statements create an inference of discriminatory motive." Opp'n at 11. Direct evidence does not require one to infer a motive—it is indirect evidence that requires such an inference. See DeJung v. Superior Court, 87 Cal. Rptr. 3d 99, 111 (Cal. App. 2008)

8

("Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.").

The Court next examines Plaintiff's indirect evidence under the McDonnell Douglas factors.

### 2. Eyraud Has Not Satisfied the McDonnell Douglas Factors

To prevail on a summary judgment motion, an employer is required to show that (1) the plaintiff could not establish one of the elements of his FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment. Lawler, 704 F.3d at 1242 (citing Dep't of Fair Emp't & Hous. V. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "If the employer meets its burden, the discharged employee must demonstrate either 'that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing.'" Id. (quoting Lucent Techs., 642 F.3d at 746) (omission in original).

#### a. Prima Facie Case

Eyraud "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." McDonnell Douglas, 411 U.S. 792, 802 (1973). To state a prima facie age discrimination case under FEHA, Eyraud must establish that: (1) he was a member of a protected class (i.e., 40 years of age or older); (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) "some other circumstance that suggests discriminatory motive." Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1043 (9th Cir. 2017). It is undisputed that

9

Eyraud satisfied the first and third elements based on his age and the fact that he suffered employment termination. What the parties' dispute is whether Eyraud was performing competently and whether the circumstances suggest his termination was attributable to a discriminatory motive.

Assuming, without deciding, that Eyraud carried the minimal burden of establishing a prima facie case of age discrimination, his claim still fails under the pretext step of the McDonnell Douglas analysis.

### b. Legitimate, Nondiscriminatory Reason

Once an employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802.

Swift asserts that Eyraud was terminated because his inability to back up his truck in January 2016 raised serious safety concerns. Mot. at 8. The company received two separate complaints—one from a customer and one from an employee—that Eyraud was unable to back up his truck safely. Swift then sent Eyraud to training to verify whether the complaints were accurate. After several days of training from two instructors at different facilities, Swift confirmed that Eyraud lacked sufficient skills to back up his truck safely.

Although Eyraud disputes the veracity of the complaints about his backing ability, the proper inquiry is not whether Eyraud actually committed the acts alleged in the complaints. Cotran v. Rollins Hudig Hall Int'l, Inc., 948 P.2d 412, 421-22 (Cal. 1998). Rather, the proper inquiry is whether Swift had an

honest belief that the complaints alleged true acts after an appropriate investigation. Id. Here, Swift's investigation corroborated the complaints against Eyraud and the company then discharged him for a non-arbitrary reason: he could not back up a full-sized truck safely. Swift has carried its burden of establishing a legitimate, nondiscriminatory reason for terminating Eyraud.

### c. Evidence of Pretext

Where an employer is able to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the employee to show that the employer's proffered reason was a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804. An employee demonstrates pretext "through direct evidence or circumstantial evidence showing that the employer's explanation is internally inconsistent or otherwise not believable." Chuang v. Univ. of Cal. Davis, Bd. Of Trs., 225 F.3d 1115, 1127 (9th Cir. 2000). An employment decision must be "substantially motivated by discrimination" to be unlawful under FEHA. Harris v. City of Santa Monica, 294 P.3d 49, 61 (Cal. 2013).

Eyraud argues that he has shown pretext because (1) he had not been in enough accidents to raise his safety score to the level that required intervention; (2) he was "forced" into backup training and believed Swift's Get Out And Look (GOAL) policy necessitated him to seek assistance from others when backing up his truck; (3) the decision to terminate him was made on a subjective assessment; (4) he was not told about the complaints at the time Swift received them; (5) he does not believe that

Swift had sufficient corroborating documentation about his performance deficiencies; (6) there was a "culture of bias" against older employees; and (7) he was treated differently than younger employees. Each of Eyraud's arguments fails.

First, Eyraud has not provided legal precedent or company policies that require Swift to wait until an employee repeatedly damages property or badly injures someone to terminate an employee who exhibits attributes that could cause an accident. The policy Eyraud references does not limit termination to only those drivers who had been in a certain number of crashes or accidents. See Evans Dep., ECF No. 15-2, pp. 9-17. Plaintiff admits that he "touched" this "thing" while backing up on Amazon's property but chooses to view it as not being an accident because there was no damage to his truck. Nothing about Eyraud's argument suggests that Swift's reason for terminating Eyraud was not credible. The court will not second guess Swift's personnel decisions. See Sharpe v. Am. Tel. & Tel. Co., 66 F. 3d 1045, 1050 (9th Cir. 1995) (explaining that "discrimination laws are not intended as a vehicle for general judicial review of business decisions.")

Second, there is no evidence that Eyraud was "forced" to attend remedial backing training. Opp'n at 14. Eyraud stated that he accepted the "opportunity" to receive more training in this area. Eyraud Dep. at 83. Eyraud's citation to Azzaro v. County of Allegheny, 110 F.3d 968, 974-75 (3d Cir. 1997) is neither relevant nor persuasive. In Azzaro, the plaintiff presented evidence that no one else in the recent history had been terminated by her employer in the same way as she. Id.

Eyraud failed to present any evidence that Swift did not terminate any other drivers prior to their safety score exceeding 15 points, or that Swift did not terminate other drivers who were unable to back up a full-sized truck without assistance. Eyraud argues that his inability to back up safely was not a problem because he followed Swift's GOAL policy and asked for assistance when backing up. Yet he fails again to provide any evidence that Swift has a policy of not terminating drivers who cannot back up safely if those drivers follow the GOAL policy and ask for help

Third, Eyraud's argument that he was terminated based on subjective assessments ignores much of the evidence. Eyraud relies entirely on Kramer's evaluation of his backing ability; however, Swift presented evidence that the termination decision came after multiple independent reports that Eyraud was unable to back up his truck safely. Moreover, the cases Eyraud cited regarding the subjectivity inherent in employment decisions based on "soft skills" are distinct from the instant case. See Xin Liu v. Amway Corp., 347 F.3d 1125, 1131 n.3 (9th Cir. 2003) (stating that "soft skills" are "skills that 'cannot be taught,'" such as "being upbeat" and understanding "what motivates team members"); Nanty v. Barrows Co., 660 F.2d 1327, 1334 (9th Cir. 1981), overruled by O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756 (9th Cir. 1996) (noting that subjective job criteria, such as being "neat, articulate and personable" presented the opportunity for discriminatory abuse). These cases demonstrate that backing up a full-sized truck does not qualify as a "soft skill" because it is capable of being taught and assessed objectively, unlike a personality trait.

13

Fourth, Eyraud's argument that he was not immediately notified about Amazon's and Evan's complaints does not demonstrate pretext. Eyraud argues the complaints are disputed because he was not immediately told about them. And while Eyraud disputes the veracity of the complaints Swift received about his ability to safely back up the truck, the proper inquiry is not whether Eyraud actually committed the acts alleged in the complaints. King v. United Parcel Serv., Inc., 60 Cal. Rptr. 3d 359, 368 (Cal. App. 2007). Rather, "[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." Id. Here, Swift's investigation, via the trainings, corroborated the complaints against Eyraud and the company then discharged him because he could not safely back up his truck. Unlike the case cited by Eyraud, Logan v. Denny's, Inc., 259 F.3d 558, 575 (6th Cir. 2001), Swift provided evidence that complaints actually existed and that Swift provided Eyraud with remedial training prior to his termination.

Fifth, the record contradicts Eyraud's argument that there was an absence of corroborating documentation about his performance deficiencies. Eyraud relies on McGinest v. GTE Service Corporation, (9th Cir. 2004) 360 F.3d 1103, in which there were no memoranda, meeting notes, or other evidence of the hiring freeze that purportedly justified the plaintiff's termination. Id. at 1123. Here, Swift presented numerous pieces of evidence, including emails and letters, which detailed Eyraud's inability to back up safely prior to his April 2016

14

1  termination.

2  Sixth, Eyraud's claim that Swift had a "corporate culture of
3  bias" is belied by the record. "[M]ere discriminatory thoughts
4  or stray remarks are not sufficient to establish liability under
5  the FEHA." Harris v. City of Santa Monica, 294 P.3d 49, 61 (Cal.
6  2013) (holding that FEHA us not violated by discriminatory
7  thoughts, beliefs, or stray remarks that are unconnected to
8  employment decision-making). Here, the only evidence Eyraud
9  presented was in the form of two isolated remarks by non-
10 supervisory employees. There is no evidence that any of the
11 supervisors who made the termination decision ever showed any
12 discriminatory animus or knew of the remarks made to Eyraud.

13 Seventh, Eyraud fails to present a single piece of evidence
14 to support his claim that he was treated differently than younger
15 employees. The case upon which Eyraud relies—an abrogated, 20-
16 year-old opinion from another circuit—states that a plaintiff may
17 show pretext through disparate treatment by proving a disparity
18 between the plaintiff and other employees "similarly situated in
19 all relevant respects." Lynn v. Deaconess Med. Ctr.-W. Campus,
20 160 F.3d 484, 487–88 (8th Cir. 1998), abrogated by Torgerson v.
21 City of Rochester, 643 F.3d 1031 (8th Cir. 2011); Opp'n at 17.
22 Eyraud has made no effort to identify a single employee, let
23 alone one similar in all relevant respects, that Swift treated
24 differently than him.

25 In sum, Eyraud has not presented evidence upon which a
26 reasonable jury could conclude Swift's reason for termination was
27 mere pretext for age discrimination.
28 ///

### 3. Cat's Paw Theory

Finally, Eyraud argues that he has proven discriminatory animus under the cat's paw theory of discrimination. Opp'n at 19-21. This argument also fails. Under the theory, a discrimination claim may arise "where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus." Galdamez v. Potter, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005). What Eyraud's argument lacks is any evidence that Brown or Kramer were the decision-makers in his termination. Eyraud stated that he knew John Kramer was the person who recommended his termination because his attorney told him so. Eyraud Dep. at 22. An attorney's belief that an employee was a supervisor, without any supporting evidence, does not make that employee a supervisor. The record shows that Kramer reported his assessment of Eyraud's backing up abilities and a separate group of supervisors made the decision to terminate based that report, as well as three independent, corroborating reports that Eyraud could not back up safely. While Eyraud may dispute the veracity of those reports, there is no evidence that Swift had reason to doubt them or insufficiently investigated at the time of Eyraud's termination.

The Court grants summary judgment to Swift on Eyraud's second claim because the evidence, viewed in the light most favorable to Eyraud, does not meet the legal standard of discrimination under FEHA.

### C. Claim III: Age Retaliation

Eyraud's third cause of action alleges that Swift retaliated

16

against him based on age in violation of FEHA §§ 12940 and 12941. Compl. at 13-17. Swift argues the claim must be dismissed for several reasons, primarily that Eyraud has not provided evidence that he engaged in a protected activity.

To prevail on a FEHA retaliation claim, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). If the plaintiff demonstrates the presence of those three factors, the Court then uses the same McDonnell Douglas burden-shifting framework utilized to analyze the above FEHA discrimination claim. See id. Asserting one's civil rights by complaining about unlawful misconduct is a protected activity under FEHA. Id.

Rather than identify the "protected activity" upon which his retaliation claim depends, Eyraud provides the elements of a FEHA retaliation claim and concludes, without citing to any evidence, that he has met his burden. Opp'n at 18. Although Eyraud's Complaint alleges that retaliation was based on "complaining about and reporting . . . inappropriate conduct," no evidence was presented that Eyraud ever complained about, let alone reported, the two comments he believes were inappropriate. Compl. at 14 ¶ 41(f).

The evidence, viewed in the light most favorable to Eyraud, does not meet the legal standard of retaliation under FEHA. The Court grants summary judgment to Swift on Eyraud's third claim.

///
///

1 **D. Claim IV: Retaliation and Wrongful Termination in Violation of Public Policy**

Eyraud's fourth cause of action alleges that Swift retaliated against him and wrongfully terminated him in violation of public policy. Compl. at 17–20. In California, a plaintiff establishes a claim for wrongful discharge in violation of public policy by proving that (1) he was employed by the defendant, (2) the defendant discharged him, (3) a violation of public policy substantially motivated the discharge, and (4) the discharge caused him harm. Diego v. Pilgrim United Church of Christ, 180 Cal. Rptr. 3d 359, 364 (Ct. App. 2014).

Eyraud has not identified a public policy under which his claim arises. Accordingly, it appears Eyraud's wrongful termination is derivative of his three preceding FEHA claims. He cites to Green v. Ralee Engineering Company, 960 P.2d 1046 (Cal. 1998) for the principle that "an employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." Opp'n at 19. Such a principle would be useful were there any evidence that Eyraud reported illegal activity. In this case, however, it is undisputed that no reporting took place.

Just as each of Eyraud's other claims have failed, so too does his claim for retaliation and wrongful termination in violation of public policy. The Court grants Swift summary judgment on Eyraud's fourth claim.

**III. ORDER**

For the reasons set forth above, the Court GRANTS

Defendants' Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.

Dated: May 9, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE